The verdict being supported by evidence, and no error of law appearing, the court properly overruled the defendants' motion for new trial.
 DECIDED MARCH 9, 1943.
A. B. Mikell instituted a trover proceeding against Hollis Cannon and M. O. Taylor, trading as Taylor Cannon Garage, for recovery of a Dodge sedan automobile. The petition set out that the defendants were in possession of "one Dodge sedan, 1933 model, motor No. 25796, of the value of $75," to which the plaintiff claimed title, and that the defendants refused to deliver the property to him after demand therefor. The defendants filed an answer in which they admitted possession of the automobile described, but denied the remaining allegations of the petition. They alleged, that they "agreed to install a motor, which was purchased by plaintiff from Georgia Motor Finance Company, in an automobile chassis for a sum of $37, including the price of the motor, to wit: $15;" that when the work was completed the plaintiff paid the defendants $34 and took possession of the automobile; that on the next day the plaintiff brought the automobile back and stated that he was not satisfied with the motor which he had purchased, and requested the defendants to take the car, refund the $34 paid to them, and keep the automobile as security for the $34 until "either he or they could sell it and pay for the garage repair bill;" and that this agreement was assented to by the plaintiff and the defendants, and the automobile now remains in the defendants' possession awaiting sale.
On the trial the plaintiff testified, that title to the automobile as described was in him; that the defendants were in possession of it, and refused after demand to deliver it to him; that he had carried the automobile to the defendants, who operated a garage, for them to repair it, and was advised by the defendant Taylor that *Page 39 
the motor was in a bad state of repair, and "he thought he could get a better motor;" that Taylor accompanied the plaintiff to the Georgia Motor Finance Company, where a motor was purchased, and Taylor told the plaintiff that he (Taylor) would pay therefor, "as the Georgia Motor Finance Company owed them some money;" that Taylor stated that after pulling out the old motor and installing the other one, if it did not prove satisfactory the labor "would not cost a dime;" that Taylor agreed, if the new motor did not work, to replace it with the old motor; that when this work was done the plaintiff paid for the entire job, $35, took the automobile from the garage, and started home; that after going less than a mile he discovered that the motor had a knock in it, and the automobile would not run as it should; that he communicated with Taylor, and Taylor told him to go ahead, and, if the motor gave him any trouble, to call him, and he would come and get the automobile and would not charge therefor; that the plaintiff, relying on these promises, drove the automobile to his home; that on the next morning when he started to return to Statesboro, five quarts of oil were required in order to fill the crank case; that the motor had used this amount on the ten-mile trip home from Statesboro; that the plaintiff returned the automobile to the defendants that morning; that the defendants knew the automobile would not run, and refused to do any work on it after the plaintiff had paid them $35 for the work; that he demanded that his old motor be replaced in the automobile when it appeared that it would cost $85 to repair the motor then in the automobile so that it would run; that the defendants had placed this motor in the automobile "with the distinct understanding that if the motor was not satisfactory they would place his motor back in the car free of any charge;" that the defendants returned to the plaintiff the $35 which he had paid for the new motor and repairs, on condition that the plaintiff leave the automobile with them to sell, with the understanding that if the defendants could sell the automobile for enough, they were to pay to the plaintiff $25 and retain the balance of the purchase-price for their repair bill; that the defendants did not sell the automobile, and they told the plaintiff he would not get anything. The plaintiff further testified in substance that when he carried the automobile to the garage it was in fair running order, and that he demanded that the defendants return it to him with the old motor *Page 40 
placed in it, when they informed him that they would not sell the automobile and that he would not get anything. On cross-examination he testified: "I admit that the motor number of the motor in the car when levied on was not the same number as set out in the suit, but was No. T 81-31159. That is the number of the motor installed by Taylor and Cannon." The testimony of two other witnesses tended to support the plaintiff's testimony. These witnesses also testified that the plaintiff's automobile was worth $75.
The defendants moved for a nonsuit on the ground of a variance between the allegata and probata, in that there was a difference between the motor number alleged in the petition and the motor number testified to by the plaintiff. The judge overruled the motion, and the defendants excepted pendente lite.
The defendants testified, in substance, that they repaired the automobile; that the motor was placed in it with the plaintiff's consent, and he understood that he was to pay therefor, and he did pay therefor; that they refunded the money when complaint was made by the plaintiff; that he readily agreed to leave the automobile in their possession for the purpose of selling it and paying $25 to the plaintiff, applying the balance to the repair bill, but before the automobile could be sold, in fact three days after it was left with them, they were served with the trover suit; that the number of the motor in the automobile levied on was not the same number as set out in the suit, but was an entirely different number and a different motor.
The plaintiff elected to take a money verdict, and the jury returned a verdict for him of $75. The defendants' motion for a new trial was overruled, and they excepted. They assigned error on the refusal to grant a nonsuit. In ground 3 they set up that the verdict was without evidence to support it, for the reason that the plaintiff admitted that he voluntarily placed the automobile in the hands of the defendants, and his evidence failed to show any conversion or attempted conversion on their part; and that the placing of the automobile in the defendants' hands constituted a valid contract between the parties, which was not breached in any manner by the defendants.
The exception *Page 41 
to the refusal to grant a nonsuit can not be considered. It has been held repeatedly that an assignment of error on refusal to grant a nonsuit will not be considered where the record discloses that the case proceeded to a verdict and judgment for the plaintiff, and where the defendant moved for a new trial on the ground that the verdict was without evidence to support it.Trapnell v. Bird, 21 Ga. App. 21 (98 S.E. 498); GeorgiaGranite Cor. v. Union Granite Cor., 31 Ga. App. 261 (4) (120 S.E. 547).
Whether or not the automobile was inaccurately described in the petition as respects the motor number, the defendants admitted possession of the car, and this precluded any inquiry into whether there was a variance between the allegations and the proof as to the motor number. The jury were authorized to find that there had been a conversion of the automobile when, after the defendants had received it with the understanding that they would sell it and pay the plaintiff $25 of the proceeds, applying the balance on the repair bill, they refused to sell it and to pay the plaintiff anything therefor. The jury were authorized to find that this action on the part of the defendants constituted a conversion of the automobile to their own use. The evidence supported the verdict and was not contrary to law. The court did not err in overruling the motion for new trial.
Judgment affirmed. Sutton and Felton, JJ., concur.